ELISHA WILMARTH *vs.* BENJAMIN B. KNIGHT & others.

On a complaint under the Rev. Sts. c. 116, the question of a prescriptive right to flow the land is not open before the sheriff's jury, but must be tried at the bar of the court of common pleas.

An objection to the form of a warrant for a sheriff's jury, under the mill act, is waived by appearing before the jury, and making an agreement in writing as to the assessment of damages.

On the trial of a complaint under the mill act before a sheriff's jury, the construction and effect of a former verdict are to be determined by the sheriff, and not by the jury.

A verdict of a jury on a complaint under the mill act, which declares that the " flowing is necessary to the height of the present dam and no higher," and fixes that height by reference to a mark in the rock, authorizes the owner of the mill to raise the water to the height to which a dam of that height would raise the water, and not merely to the height to which that dam itself reaches.

COMPLAINT under the mill act. A trial before the sheriff resulted in a verdict for the complainant, which was returned by the sheriff to the court of common pleas with a certificate of the following rulings :

The respondents offered in evidence a copy of a verdict rendered by a sheriff's jury in 1833, and accepted by the court, upon a similar complaint by Seba Carpenter against Thomas Harkness and Thomas J. Stead, one clause in which was thus : "And the said jury say that such flowing is necessary to the height of the present dam, and no higher, the top of said dam—meaning the top of the present flashboards—being on a level with a mark in a rock, which rock is on the westerly side of the pond, about eighteen rods from said dam, up stream, and at all the time during the whole year."

At the hearing of the present complaint, the parties made the following agreement in writing : " It is agreed that no damages are to be assessed for any flowing by the defendants to the height prescribed by the jury in the case of *Seba Carpenter* v. *Thomas Harkness & Thomas J. Stead*, in the year 1833 ; but that in this case such damages only shall be assessed as the plaintiff has sustained by a flowing of his lands, not before authorized. And it is further agreed that, if the jury find that the flowing by the defendants has been higher than was authorized by the judgment

before named, they shall direct and determine the true height thereof, establishing it at the height stated in the before named judgment, and that the defendants will hereafter keep the same to the said height; and the plaintiff, in consideration, agree to waive any other claim for damage under the complaints aforesaid, except past damages for three years next previous to the date of said complaints, for such injury as has resulted from flowage not before authorized. The defendants, by this agreement, do not intend to waive their objections made to the rulings of the sheriff, on the admissibility of testimony, or on the meaning of the verdicts and judgments before mentioned, respecting the height to which the defendants are entitled to flow the water by their dam."

The respondents, on a subsequent day, objected to the form of the warrant for a jury, because it did not set forth the pleadings upon which it was ordered. But the sheriff overruled the objection.

Evidence of a prescriptive right to flow the land in question was offered by the respondents, and excluded by the sheriff.

The respondents contended that, under the former verdict, they were entitled to keep the dam at the height of the mark in the rock described, and to flow as high as the dam, kept at that height, might cause the water to rise. But the sheriff instructed the jury that, by a proper construction of the verdict, the respondents had no right to raise the water so that it should flow higher than to the top of the dam as it then was, or to the mark in the rock.

The complainant then offered to leave it to the jury, as a question of intent of the parties, what was meant by the verdict; and to offer evidence upon that point. But the sheriff ruled that it was a question of law, and not for the jury, and refused the evidence.

The court of common pleas accepted the verdict, and the respondents appealed.

*C. B. Farnsworth*, for the respondents.

*T. D. Eliot & J. Daggett*, for the complainant.

Thomas, J. 1. The evidence as to the prescriptive right of the respondents to flow the land of the complainant was rightly excluded. The question was not open before the sheriff's jury. The issue must be tried at the bar of the common pleas. Rev. Sts. *c.* 116, § 8. *Adams* v. *Pearson,* 7 Pick. 341. *Charles* v. *Porter,* 10 Met. 37.

2. The objection to the form of the warrant was not open before the sheriff's jury. If it was a valid objection, it was waived by the written agreement made at the trial before the sheriff. Such an agreement would have been senseless, if the respondents intended to rely upon a defect of the warrant, which would vacate the entire proceedings. Such also must have been the understanding of parties; for the written agreement expressly saves the exceptions to the ruling of the sheriff upon the admission of evidence and the construction of the verdict, but is silent as to that upon the form of the warrant.

3. The sheriff rightly ruled that the construction to be given to the verdict of 1833 was a matter of law, and for him to determine.

4. But we think the verdict gave to the respondents the right to flow as the dam flowed; that the capacity of the dam was the measure of the right.

This was a verdict rendered upon a complaint under the mill act. By that act, any person, " whose land is overflowed, or otherwise injured by such dam," may obtain compensation therefor. Rev. Sts. *c.* 116, § 4. The third section provides, that the height to which the water may be raised, and the length of time for which it may be kept up, in each year, may be restricted and regulated by the verdict of the jury. Section 18 enacts that, " if it shall be alleged in the complaint that the dam is raised to an unreasonable height, or that it ought not to be kept up and closed during the whole year, the jury shall decide how much, if any, the dam shall be lowered, and also whether it shall be left open any part of the year, and if any, what part, and shall state such decision as a part of their verdict."

Looking at the provisions together, it is quite plain that the statute regards the height to which the water may be raised and

the height of the dam as the same thing; in other words, measures the one by the other.

By § 19 the jury are to ascertain and determine by their verdict what sum, if any, to be paid annually, would be a just and reasonable compensation for the damages to be occasioned " by the dam," so long as it shall be used in conformity with the verdict; and also what sum in gross for all the damages to be thereafter occasioned by such use " of the dam," for the right of maintaining and using the same forever in manner aforesaid.

By § 20 the complainant is allowed three months in which he may elect or not to take the sum in gross " for the right to maintain and use the dam forever." Sections 21, 22, 36 and 37 use the same language, indicating that it is the height of the dam, which is the matter of regulation.

Section 41 provides that in every case of original complaint the respondents may tender any sum for the damages before incurred, and may also offer to pay any certain annual compensation for the damage that may be thereafter occasioned by the dam in question.

When, in the light and under the direction of these provisions the jury render their verdict that such flowing is necessary to the height of the dam, and no higher, we think they mean to say, in substance, that the respondent may flow as his dam now flows, and that the dam at its present height shall be the measure of his right to flow.

The verdict proceeds to say that the top of the dam is the top, not of the permanent structure, but the top of the flashboards; and as these are liable to be removed or swept away, it indicates by a mark in a rock the exact line of such top. The words " no higher " are to be taken in their connection with the former part of the sentence. The jury were to determine the height to which the water or the dam may be raised. They say that the flowing is necessary to the height of the dam and no higher; that is necessary, and it is all that is necessary.

The suggestion is made, that this leaves the height of the water and the extent of the flowing uncertain; as the water may often rise over the dam to a considerable height; and that great

damage might thus be done to the land, and not assessed by the jury.

But juries are called upon to assess damages for injuries from dams already constructed, the extent of whose capacity to flow has been tested, and the traces of whose flowage are upon the land of the complainant. If the true meaning of their verdict is, that the respondents should maintain their dam as it was, the jury doubtless assessed the damages accordingly.

It is obvious that, upon the construction given to the verdict by the complainant, it would afford a most inconvenient standard, to comply with which would require the greatest care and watchfulness. With a dam of a given height, the respondents must see that at no season, in no state of the weather, the water shall flow over their dam a hair's breadth.

We think the more obvious, as well as reasonable, construction of the verdict is, that the respondents were to maintain the dam as it was, and no higher. And as they meant, by "dam," also the flashboards, they fix the height more certainly by the mark in the rock.

In a great many instances of verdicts, contracts,and deeds of release, language like that in this verdict has been used ; and the practical construction, we think, has been, that where water was to be kept up to the height of the dam, it was to the height to which the dam raised it.

To say that the jury assessed the damages for a flowing no higher at any time than the top of the dam is, of course, to assume the question at issue. We must presume that they assessed damages for flowing, as fixed by the verdict when rightly understood. The most obvious and reasonable presumption is, that the jury were governed, as to the past and future damages, by one rule, and assessed them for the dam as it was, and for the injury which would result from it when maintained in the usual or ordinary way.

Upon this point, therefore, the exceptions to the ruling of the sheriff are sustained, and the                    *Verdict set aside.*